**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

INTERNATIONAL COUNCIL OF E-COMMERCE
CONSULTANTS,

Plaintiff,

v.                                                                        No. CV-08-780 WDS/ACT

SECURITY UNIVERSITY LLC, and
SONDRA SCHNEIDER,

Defendants.

ORDER ON MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND IMPROPER VENUE

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (Docket # 14) The Court has reviewed the briefs submitted by the parties and all supporting affidavits and exhibits, has heard oral argument, and is otherwise fully advised. The Court concludes that the motion is well taken and should be granted, subject to the STAY as discussed below.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff EC-Council is a company that provides internet/computer training. Customers who successfully complete the training receive certifications for the subject matter. Plaintiff offers to license its training material to other companies for a fee. A company so licensed is designated an Authorized Training Center, or "ATC." Defendant Security University LLC ("SU") entered into an ATC agreement with EC-Council in early December 2004. As an EC-Council ATC, SU was provided with curricula developed by EC-Council, and was permitted to use EC-Council's trademarks and confer upon its students various EC-Council certifications that are known in the industry, such as the "Certified Ethical Hacker (CEH)" certification. SU was authorized to use EC-

Council's curricula and confer the certifications as long as it maintained the ATC agreement with EC-Council. The ATC agreement also contained a one year non-compete clause that took effect upon termination of the agreement.

At the time SU and EC-Council entered into the ATC agreement in December of 2004, EC-Council was a Nevada corporation with a principle place of business in New York. SU was, and continues to be, a Connecticut corporation, and the individual defendant, Sondra Schneider, is also a Connecticut resident. The original ATC agreement and all renewal agreements between the parties contained a provision stating that any litigation arising out of the contract would be conducted in Nevada. EC-Council moved its operation to New Mexico in the summer of 2006.

In July 2007 SU submitted its ATC fee to EC-Council for the December 2006 to December 2007 renewal. SU elected not to renew the ATC agreement in December 2007. Plaintiff's complaint alleges that notwithstanding the termination of the ATC agreement, SU has continued to hold itself out as an EC-Council ATC, continued to use EC-Council's trademarks in its website and other marketing materials, and continued to use EC-Council's training curricula. Plaintiff alleges that the defendants have also made commercial use of terms that are confusingly similar to EC-Council's trademarks. For example, Plaintiff alleges that SU has promoted a competing "QEH" (Qualified Ethical Hacker) certification that is intended to be confused with plaintiff's "CEH" certification. Plaintiff alleges that this conduct constitutes trademark infringement, unfair competition, and other torts.

Plaintiff also alleges that the defendants embarked upon a negative information campaign against EC-Council, stating to people in the e-commerce and internet security fields that the quality of EC-Council's work was poor, that EC-Council was not a valid certification entity, that EC-Council "stole" defendants' coursework content, that EC-Council was led by a dishonest person, and

that EC-Council had committed fraudulent conduct. Specifically, plaintiff alleges that Ms. Schneider stated at an industry meeting in Dallas that EC-Council "stole" and/or "copied" SU's content, and that EC-Council was an unethical and/or unprofessional organization led by a "shady" person.

For purposes of this motion, the Court accepts all of these allegations as true. Defendants SU and Sondra Schneider have filed the instant motion seeking dismissal of the complaint on the basis that this court does not have personal jurisdiction over them.

## ANALYSIS

In determining whether personal jurisdiction exists over a nonresident defendant, a federal court applies the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment. *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). Determination of personal jurisdiction in this case, therefore, is made in accordance with New Mexico law. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995); *Pelton v. Methodist Hosp.*, 989 F. Supp. 1392, 1393 (D.N.M. 1997). New Mexico interprets its long arm statute "as extending our personal jurisdiction as far as constitutionally permissible." *FDIC v. Hiatt*, 117 N.M. 461, 463, 872 P.2d 879, 881 (1994). The statute provides for personal jurisdiction over an out-of-state defendant who performs certain acts including "the transaction of any business within the state," and "the commission of a tortious act within this state." N.M.S.A.1978 § 38-1-16(A)(1) and (A)(3). Only causes of action arising from acts enumerated in the statute may be asserted against the nonresident defendant. N.M.S.A. § 38-1-16(C). Plaintiffs in this case rely on both subsections (A)(1), transaction of business, and (A)(3), commission of a tortious act, in asserting personal jurisdiction over SU in New Mexico.

New Mexico courts apply a three-pronged test to determine whether they can constitutionally assume personal jurisdiction over a nonresident defendant: (1) the defendant's acts must be among

3

those enumerated in the long-arm statute; (2) plaintiff's cause of action must arise from those acts; and (3) the exercise of jurisdiction over the defendant must comport with the Due Process Clause. *Benally v. Amon Carter Museum of Western Art*, 858 F.2d 618 (10th Cir. 1988), *citing Salas v. Homestake Enters., Inc.*, 106 N.M. 344, 742 P.2d 1049 (1987). New Mexico interprets its long-arm statute as "extending our personal jurisdiction as far as constitutionally permissible," with the first and third parts of the test equated with the due process standard of "minimum contacts." *FDIC v. Hiatt*, 117 N.M. 461, 463; 872 P.2d 879, 881 (1994).

The first prong of the jurisdictional test requires the Court to determine "whether a party's business activity constituted 'purposeful availment' of the privilege of conducting activities within the forum state." *Benally v. Amon Carter Museum of Western Art*, *supra*, at 623, *citing Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958). The application of the rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. This requirement of purposeful availment has been described as the "'Constitutional touchstone' of the minimum contacts analysis." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123 (W.D. Pa. 1997).

When personal jurisdiction issues are entwined in a fact pattern which includes Internet use, the courts have generally followed the approach of the *Zippo* case and applied a sliding scale whereby "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id*. at 1124. The New Mexico Court of Appeals has approved of the *Zippo* sliding-scale approach in jurisdictional cases based on Internet contacts. *Sublett v. Wallin*, 136 N.M. 102, 94

P.3d 845, 852 (Ct. App. 2004). At one end of the spectrum envisioned in *Zippo* are those situations where a defendant clearly "does business over the Internet" by, for example, entering into contracts with residents of foreign jurisdictions that involve the knowing and repeated transmission of computer files over the Internet. In these situations, personal jurisdiction in the foreign state is appropriate. At the other end of the spectrum, where personal jurisdiction is not justified unless other contacts are present, are those cases where the defendant simply posts information on a web site accessible to users in other jurisdictions. In between lie cases involving interactive web sites where a user can exchange information with the host computer. "In these cases," the *Zippo* court held, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id*. at 1124.

For purposes of the "minimum contacts" analysis in this case, the parties have directed the Court's attention to various aspects of the interaction between EC-Council and SU. Initially, both parties acknowledge that there were no contacts with the state of New Mexico in 2004 when SU first agreed to enter into the ATC agreement. However, EC-Council argues that it was firmly established as a resident of New Mexico when the ATC agreement was renewed in the summer of 2006. EC-Council argues that SU knew that EC-Council had relocated to New Mexico at the time of the renewal, and the Court accepts that fact as true for purposes of this motion. EC-Council argues that SU's renewal of the contract after EC-Council relocated to New Mexico is sufficient minimum contact with the state to justify the exercise of jurisdiction over SU in New Mexico.

The Court does not agree with plaintiff's proposition. First, the Court is not convinced that the mere renewal of an ongoing contract after one of the parties has moved to a new state is sufficient minimum contact to invoke jurisdiction in the new state over the other party to the contract. In this case, however, the contract in question had, both when first signed and at the time

of all renewals, a forum selection clause stating in relevant part that "judicial proceedings regarding any matter arising under the terms of this agreement shall be brought" in Nevada. "The foreseeability that is critical to the due process analysis is … that the defendant's conduct and connection with the forum State are such that he should reasonably expect to be haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). Given the forum selection clause, SU could reasonably have expected to be haled into court in Nevada, not New Mexico. The Court rejects the plaintiff's position that SU, by renewing the agreement after plaintiff relocated to New Mexico, subjected itself to the jurisdiction of New Mexico courts.

Plaintiff next argues that SU's internet site was sufficiently interactive to constitute minimum contacts with New Mexico, following the guidelines set forth in *Zippo*. SU's website is undoubtedly interactive, in that prospective students can register for classes at the site. However, it is not that interactivity that brought plaintiff and defendant together, i.e., this lawsuit does not arise out of plaintiff's registration for classes at SU's website. Furthermore, no evidence is before the Court that *any* New Mexico resident has registered for a class via SU's website, and most of the classes offered by SU appear to be offered in either in Virginia or California. There is no evidence of classes being offered by SU in New Mexico.

In terms of website interactivity, this case presents a set of facts distinguishable from *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996), for example, where defendant Patterson, a Texas resident, electronically entered into an agreement with Ohio-based Compu-Serve. Patterson intended to distribute "shareware" through Compuserve's Internet server located in Ohio. *Compuserve*, 89 F.3d at 1260. From Texas, Patterson electronically uploaded thirty-two software files to Compuserve's server in Ohio via the Internet. Id. at 1261. The court in that case found

6

jurisdiction in Ohio notwithstanding the fact that Patterson had never set foot in Ohio, but in that case it was the defendant himself who had interacted electronically with the plaintiff and transmitted electronic files into the state.

*Zippo* is also distinguishable from this case. The Plaintiff in *Zippo* was the well known manufacturer of tobacco lighters, operating in Pennsylvania. The defendant, ZippoDotCom, was a California corporation operating an Internet Web site and news service. While Zippo Manufacturing had had no business dealings with ZippoDotCom, ZippoDotCom had approximately 3,000 Pennsylvania residents who subscribed to its news service. ZippoDotCom also had contracted with seven Pennsylvania Internet Service Providers (ISPs) to provide the news service to their customers. The court found that this easily constituted the "purposeful availment" of doing business in Pennsylvania. *Id.* at 1126. The Court finds that there has been no evidence presented in this case that, as suggested by plaintiff at oral argument, that any acts by defendant SU constituted the purposeful availment of doing business in New Mexico.

Furthermore, the Court notes that there is no basis for assuming that the *Zippo* court would have found jurisdiction over the defendant had the Pennsylvania-based plaintiff merely shown that residents and/or ISPs in Virginia and California had signed up for and received the defendant's internet news service. This latter scenario is far closer to approximating the facts of the case before the Court.

The Court also finds that the instant case is distinguishable from *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482 (1984). That case arose from an allegedly defamatory article published in the National Enquirer. Shirley Jones, the plaintiff and a California resident, sued the National Enquirer as well as the writer and editor of the story. In *Calder*, the Supreme Court held that a California court had jurisdiction over the writer and editor, who worked for the National Enquirer in Florida.

EC-Council cites *Calder* for the proposition that jurisdiction lies where the effects of defamation would be felt, i.e., the Supreme Court noted that the effects would be felt in California because Shirley Jones lived and worked there.

However, a key fact underlying the *Calder* opinion was that 600,000 issues of the National Enquirer with the story on Shirley Jones would be sold in California, and that the National Enquirer was *not* contesting jurisdiction in California. *Calder* would be relevant to the instant case if, for example, defendant Sondra Schneider, acting on behalf of defendant SU, had organized computer classes in New Mexico using plaintiff's trademarked material, but had never entered the state of New Mexico herself. Had defendant SU actually conducted classes in New Mexico there is little doubt that jurisdiction would be found over the company, and *Calder* would strongly support the argument that the individual who organized the classes would also be subject to jurisdiction here, regardless of whether she had personally entered the state.

Taking plaintiff's argument at face value would lead to the conclusion that the Supreme Court would have reached the same result in *Calder*, i.e., finding jurisdiction in California over the Florida-based writer and editor, even if the National Enquirer were only sold on the east coast and did no business in California. The Court disagrees. The Supreme Court did not rule in *Calder* that alleged victims of defamation–or other torts such as copyright or trademark infringement--could simply sue in their home state if they felt the effects of the tort in their home state. The Court finds that *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002)(No personal jurisdiction in Texas court after a Massachusetts resident posted an allegedly defamatory matter on an internet bulletin board hosted by a New York resident, even though plaintiff was a Texas resident); *Pavlovich v. Superior Court*, 58 P.3d 2 (Cal. 2002)(fact that a Texas resident knew his posting on a web site of an allegedly infringing computer program could harm industries in California was not alone sufficient for

8

personal jurisdiction in California); and *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, (9th Cir. 1977)( Bare allegation that the plaintiff had suffered harm in the forum state did not suffice to confer jurisdiction when the plaintiff was unable to show that any of the allegedly infringing items were sold or obtained in the forum state) are more persuasive and far more analogous to the facts of this case, and are controlling in this case.

Finally, the Court notes that although the individual defendant in *Revell* had no contacts with the state of Texas, the codefendant Columbia School of Journalism (CSJ) did. CSJ maintained an interactive website that was accessible by any resident of Texas. CSJ also had approximately 20 Texas residents who subscribed to its publication the Columbia Journalism Review. The Fifth Circuit deemed these contacts "not in any way 'substantial.'" *See also*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, (1985)(Jurisdiction is proper, however, where contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State. ) In the case at bar, plaintiff also provided evidence of two email newsletters sent by SU to plaintiff's principals. The Court does not find that level of internet activity "substantial" in terms of a minimum contacts analysis.

## CONCLUSION

For the reasons stated above, the Court concludes that the plaintiff has failed to present evidence that Security University's business activity constituted 'purposeful availment' of the privilege of conducting activities within New Mexico. As to Ms. Schneider individually, the only evidence presented related to her activities in states other than New Mexico. The Court also concludes that there is no basis to determine that personal jurisdiction exists over Ms. Schneider. Accordingly, defendants' motion is GRANTED. This order also renders moot plaintiff's motion for temporary restraining order (Document #15) and defendant's motion to dismiss based on forum

selection clause.  (Document #31).

## STAY

At oral argument the parties discussed the possibility that discovery would be necessary to further explore the issue of establishing jurisdiction over the defendants.  In view of its ruling, the Court recognizes that plaintiff may wish to seek additional evidence of the defendants' contacts with New Mexico.  The Court therefore STAYS the execution of this order and grants the plaintiff ten days to file a motion for leave to conduct limited discovery directed towards the issue of jurisdiction.  The motion should describe with specificity the discovery sought.  If plaintiff files such a motion, the defendants are granted an additional ten days in which to file a response.

IT IS SO ORDERED.

_____
W. DANIEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE